1
2
3
4
5
6

IN THE DISTRICT COURT OF GUAM

7

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 15-00044-002 |
| Plaintiff, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| vs. | ) | **CONCERNING VIOLATIONS OF** |
| | ) | **SUPERVISED RELEASE CONDITIONS** |
| ANNALIN MARIE PEREZ ALDAN, | ) | **IN A FELONY CASE** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the court are a Petition for Revocation of Supervised Release and supporting declaration (collectively, the "Violation Petition") filed on July 11, 2022, and a Supplemental Declaration filed on October 4, 2023. *See* ECF Nos. 204 and 261. Together, these filings allege the following violations:

1. Failed to report for drug testing on six occasions (June 1, 19, 20 and 26, 2022, July 5, 2022, and October 3, 2023);

2. Admitted to illegal use of THC and methamphetamine twice (May 26, 2022, and June 11, 2022);

3. Tested positive for marijuana metabolite on June 21, 2022;

4. Failed to remain at a residence approved by the probation office (May 28, 2022, and October 2, 2023); and

5. Unsuccessful discharge from a residential substance abuse treatment program on October 2, 2023.

On February 7, 2023, the Defendant entered admissions to the allegations in the Violation Petition. *See* Mins., ECF No. 220. On April 23, 2024, the Defendant further admitted to the violations in the Supplemental Declaration. *See* Mins., ECF No. 279. Having heard argument from

1   the parties on April 30, 2024, the court now issues this Report and Recommendation as to an

2   appropriate disposition for the supervised release violations.

3                                                    **BACKGROUND**

4   **A.      Conviction and Sentence**

5          On February 12, 2016, the Defendant was sentenced to an imprisonment term of one day and

6   three years of supervised release for the offense of Aiding and Abetting Access Device Fraud

7   (Count 2), and  for the offense of Aiding and Abetting Aggravated Identity Theft (Count 3),

8   Defendant was sentenced to an imprisonment term of 12 months, to run consecutively to Count 2,

9   with one year of supervised release (to run concurrently to Count 2).[1] *See* Judgment, ECF No. 61.

10  Among various conditions of supervised release imposed, the Defendant was ordered to refrain from

11  the unlawful use of controlled substances and to submit to urinalysis testing.  *Id.* at 3-4.

12         She served her sentence and began her original term of supervised release on January 10,

13  2017.

14  **B.      Post-Conviction Conduct**

15         On July 6, 2018, an informational report was filed after the Defendant admitted she used

16  methamphetamine on June 18, 2018, and marijuana on June 19, 2018, as well as cocaine.  *See* ECF

17  No. 76.  At the probation officer' request, the court took no action against the Defendant since she

18  had tested negative without incident for more than one year and had completed a substance abuse

19  treatment program.  *See* Order, ECF No. 76.

20         On November 7, 2018, the Defendant's term of supervised release was revoked.  *See* Mins.,

21  ECF No. 91.  The revocation was based on the Defendant's failure to participate in  a substance

22  abuse program, failing to report for drug testing twice, testing positive for drug use, failing to report

23

24  ─────────────────

25         [1]  According to the Amended Plea Agreement, the Defendant and her codefendant John
    Michael Mapote Villena aided each other in the burglary of 39 U.S. Post Office boxes.  Defendant
26  served as the "lookout" while Villena stole the mail from the mail boxes, reaching his arm through
    the back of those boxes to steal mail from neighboring post office boxes.  Among the mail stolen
27  was a debit card, which the Defendants then used to purchase various electronic items and a tool set.
    The fraudulent transactions charged to the debit card totaled no less than $11,413.96.  *See* Am. Plea
28  Agrmnt. at ¶8(b), ECF No. 24.

1    to the Probation Office twice, and failing to notify the Probation Office at least ten days prior to

2    changing her residence. *See* Revocation J., ECF No. 92. She was sentenced to time served

3    (approximately 30 days), followed by 35 months of supervised release. *Id.*

4          On July 18, 2019, the Defendant's supervised release was revoked for a second time based

5    on her failure to report for drug testing (nine times), failure to participate in a substance abuse

6    treatment program, failure to submit three monthly supervision reports, and failure to notify the

7    probation officer at least ten days prior to changing her residence. *See* R. & R., ECF No. 112, and

8    Revocation J., ECF No. 116. She was sentenced to three months' imprisonment, with credit for time

9    served, followed by 32 months of supervised release. *Id.* at 3-4.

10         On December 4, 2019, another informational report was filed after the Defendant submitted

11    two diluted urine samples and admitted to the use of methamphetamine and marijuana. *See* ECF

12    No. 123. At the probation officer's request, the court agreed not to impose any sanction against the

13    Defendant. *See* Order, ECF No. 124.

14         On September 21, 2020, the Defendant's supervised release term was revoked a third time

15    after she admitted missing seven drug tests, admitted to the use of "meth" and "meth/marijuana" and

16    tested positive for methamphetamine on three instances. *See* R. & R., ECF No. 112, and Revocation

17    J., ECF No. 159. The court sentenced the Defendant to a split sentence of one month imprisonment,

18    with credit for time served, and five months of home detention, with 31 months of supervised

19    release. *Id.* at 2-3. The Defendant was ordered to submit to drug testing, not unlawfully possess or

20    use a controlled substance, to live in a place approved by the probation officer and to notify the

21    probation officer 10 days in advance of any change in residence. *Id.* at 4-5.

22         The Defendant's current term of supervised release commenced on September 21, 2020. *See*

23    Violation Petition at 1, ECF No. 204.

24    **CURRENT VIOLATIONS**

25    **A.    Filing of Violation Petition and Issuance of Arrest Warrant**

26         On July 11, 2022, the probation officer filed the instant Violation Petition alleging the

27    Defendant violated her supervised release conditions as discussed below.

28    ///

*Missed drug tests, Admission to drug use and Positive drug test*

| DATE | ACTION |
|------|--------|
| May 28, 2022 | The Defendant submitted to a drug test at the Lighthouse Recovery Center ("LRC"), with a presumptive positive result for THC and methamphetamine. The Defendant signed an admission form attesting to the use of marijuana and methamphetamine on May 26, 2022. |
| June 1, 2022 | The probation officer conducted a home visit and met with the Defendant's father and significant other at her residence. They stated that the Defendant had not been home since May 28, 2022.<br><br>The Defendant also failed to report to LRC for a scheduled drug test, and she did not contact her probation officer to address her noncompliance and be subjected to a drug test. |
| June 13, 2022 | On June 11, 2022, the Defendant called the probation officer and stated she needed help with her addiction. The probation officer instructed her to call Valerie Reyes to schedule a counseling session and to report to the probation office on June 13, 2022.<br><br>On June 13, 2022, the Defendant reported to the probation office and submitted to a drug test, which was presumptive positive for THC and methamphetamine. The Defendant signed a form admitting that she used marijuana and methamphetamine on June 11, 2022. The Defendant agreed to make a self-referral to Guam Behavioral Health and Wellness Center and participate in substance abuse treatment at LRC. |
| June 19, 2022 | The Defendant failed to report to LRC for a drug test. She was instructed to report to LRC the following day for another drug test. |
| June 20, 2022 | The Defendant failed to report to LRC as instructed for a drug test. |
| June 21, 2022 | The Defendant reported to the probation office for a scheduled appointment and submitted to a drug test, which was presumptive positive for THC. The Defendant claimed she last used marijuana on June 11, 2022. The urine sample was set for lab analysis and was later confirmed to be positive for marijuana metabolite. |
| June 26, 2022<br><br>July 5, 2022 | The Defendant failed to report to LRC for drug tests, and she failed to contact her probation officer the following day as required to address her noncompliance and be subjected to a drug test. |

*Failed to remain at approved residence*

On July 10, 2022, the Defendant's mother contacted the probation officer and reported that the Defendant left the residence on or about July 6, 2022, and failed to return. The Defendant's mother stated she was unaware fo the Defendant's whereabouts.

At the request of the probation officer, on July 13, 2022, the court ordered that a warrant for the Defendant's arrest issue. *See* Order, ECF No. 206.

**B.      Arrest and Detention**

On January 12, 2023, the U.S. Marshals Service arrested the Defendant. *See* Arrest Warrant Returned, ECF No. 212.

On January 17, 2023, the Defendant appeared before the court, and the Federal Public Defender was appointed to represent the Defendant, subject to the filing of a financial affidavit. *See* Mins., ECF No. 213, and Appointment Order, ECF No. 214. The probation officer stated that she had no contact with the Defendant since the arrest warrant was issued. Ms. Kottke asked for a short continuance since she had not had an opportunity to speak with the Defendant about the alleged violations. Without objection, the matter was continued to January 31, 2023, and the court ordered the Defendant to remain detained pending the next hearing.

On January 31, 2023, the parties again appeared before the court. *See* Mins., ECF No. 217. Ms. Kottke stated that the Defendant had been hospitalized for several days, so she was unable to speak with the Defendant about the allegations, and she asked for another short continuance. Without objection, the Defendant's answering was continued to February 7, 2023, and the Defendant was ordered to remain detained until the next hearing.

**C.      Admissions and Subsequent Hearings**

On February 7, 2023, the Defendant appeared before the court and entered admissions to all allegations in the Violation Petition. *See* Mins., ECF No. 220. Ms. Kottke stated she was trying to get the Defendant into residential treatment, so she requested a continuance before presenting arguments on disposition. Without objection, the court continued the matter to March 7, 2023.

On March 7, 2023, the parties again appeared before the court. *See* Mins., ECF No. 222. Defense counsel stated that the Defendant was trying to get into the New Beginnings' residential facility but it was currently full. Because the Defendant suffered seizures, the Department of Corrections ("DOC") was being careful about her medical issues especially since she was pregnant. The parties hoped the Defendant could get into New Beginnings before proceeding with arguments on disposition. Without objection, the matter was continued to April 11, 2023.[2]

---

[2] The hearing was later moved to April 14, 2023. *See* ECF No. 226.

On April 14, 2023, the parties appeared before the court, and the probation officer reported that the Defendant would soon get into the residential treatment program with New Beginnings. *See* Mins., ECF No. 230. Because of the Defendant's pregnancy and medical issues, New Beginnings was holding a bed for her in a downstairs room but was waiting for the current consumer to vacate the room first. Ms. Kottke reported that the medication given to the Defendant is working well and she's had a more positive outlook these days. Without objection, the matter was continued to May 11, 2023, and the court stated it would sign orders releasing her to the program if she was able to get in sooner.

**D.    Acceptance to New Beginning and Further Court Hearing**

On May 11, 2023, the parties returned to court, and the probation officer stated that a bed for the Defendant was available, but New Beginnings was just awaiting guidance with regard to her transfer since medical clearances would first be required. *See* Mins., ECF No. 237. Ms. Kottke requested the court to release the Defendant so that she can take care of certain paperwork[3] before she entered the New Beginnings residential program. The government did not object to her release, and the court granted the request but ordered the Defendant to begin the paperwork immediately and to remain in full compliance with her release conditions so that she would not lose the bed space that was reserved for her. Without objection, the matter was continued to May 24, 2023.[4]

On June 9, 2023, the case came before the court, and the Defendant was not present because she was at treatment at New Beginnings. The probation officer reported that the Defendant had been at Guam Behavioral between May 16, 2023, to June 8, 2023, and finally entered the New Beginnings program on June 8, 2023,[5] but was in a 30-day black out period at the time of the hearing. Without

---

[3] The Defendant's parents had been caring for her two children in addition to the nine kids of the Defendant's sister. Ms. Kottke claimed that the Defendant's father has cancer, and the Defendant's children do not have their social security numbers and medicaid cards, so the Defendant wanted to begin the paperwork to get this done for her children.

[4] This was later moved to June 9, 2023, because of Typhoon Mawar. *See* ECF Nos. 243-44.

[5] There was some delay in entering the program because of Typhoon Mawar and a COVID-19 outbreak at the residential home.

objection, the matter was continued to August 15, 2023, to check on the Defendant's progress.

On August 15, 2023, the case came before the court, and again the Defendant was not present. *See* Mins., ECF No. 256. The probation officer reported that the Defendant gave birth about two weeks prior to the hearing, and there were medical issues with the baby, who is now doing well. The probation officer stated that the Defendant was submitting to drug tests at LRC, was taking several classes and enjoyed furlough on the weekends to see her other children. Without objection, the matter was continued to October 19, 2023, for a status hearing.

**E.      Filing of Supplemental Declaration and Issuance of Arrest Warrant**

On October 4, 2023, the probation officer filed a Supplemental Declaration, *see* ECF No. 261, alleging the following further violations of her supervised release conditions and requesting that an arrest warrant issue.

*Failed to participate in treatment program and remain at approved residence*

On October 2, 2023, the Defendant's mother (Bernadette Aldan) called the probation officer to report that the Defendant came home for a weekend furlough from the New Beginnings residential program and left the residence on Sunday, October 1, 2023, at about 4:00 a.m. but never returned home. The Defendant left her three children with her mother.

The probation officer confirmed that the Defendant was discharged from the New Beginnings residential treatment program on October 2, 2023, after completing about three months and 24 days in the six-month program.

As of the filing of the Supplemental Declaration, the Defendant had not contacted her parents, New Beginnings or her probation officer.

*Missed drug test*

On October 3, 2023, the Defendant failed to report to LRC for a drug test.

On October 5, 2023, the court ordered that an arrest warrant issue for the Defendant. *See* Order, ECF No. 263.[6]

///

---

[6]  The Order also vacated the status hearing set for October 19, 2023. *Id.*

**F.    Arrest and Appearance Before Court**

On April 8, 2024, the U.S. Marshals Service arrested the Defendant.  *See* Arrest Warrant Return, ECF No. 275.

On April 9, 2024, the Defendant came before the court, and Ms. Kottke requested a continuance so that she could speak with the Defendant about the new allegations in the Supplemental Declaration.  *See* Mins., ECF No. 276.  Without objection, the court set the Defendant's answering for April 23, 2024, and ordered that the Defendant be detained pending the next hearing.

**G.    Further Admissions**

On April 23, 2024, the Defendant appeared before the court and entered admissions to the violations in the Supplemental Declaration.  *See* Mins., ECF No. 279.  Ms. Kottke noted that the Defendant was pregnant again.  The court scheduled arguments on disposition for April 30, 2024, and ordered that the Defendant remain detained pending the next hearing.

On April 30, 2024, the parties returned to court and presented their respective positions on an appropriate disposition for the violations.  Having heard the parties' argument, the court now issues this Report and Recommendation for the Chief Judge's consideration.

**LEGAL STANDARD**

The standard of proof for revocation of supervised release is governed by statute. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release."  18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation).  Pursuant to Section 3583(g), revocation is mandatory if the defendant refuses to comply with required drug testing.  *See* 18 U.S.C. § 3583(g)(3).

**PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED**

The Third Amended Violation Worksheet notes that the violations are Grade C violations, which carry the potential for 3-9 months of imprisonment under the sentencing guidelines, based on the Defendant's criminal history category of I, followed by 22-28 months of supervised release.  *See*

1  Am. Violation Worksheet at ¶¶7-10 and 13, ECF No. 261-1.  Revocation is mandatory since the

2  Defendant refused to comply with required drug testing based on her admissions to failing to appear

3  for drug testing.

4         Because her underlying convictions were for Class C and Class E felonies, the maximum

5  imprisonment term the Defendant faces for revocation proceedings is 24 months. *See* 18 U.S.C.

6  § 3583(e).  The Defendant's first revocation sentence was approximately 30 days.  *See* Revocation

7  J., ECF No. 92.  The Defendant was sentenced to three months for the second revocation.  *See*

8  Revocation J., ECF No. 116.  For the third revocation, the Defendant received a split sentence of one

9  month imprisonment and five months of home detention.  *See* Revocation J., ECF No. 159.

10        The probation officer asked that the Defendant be sentenced to nine months' imprisonment,

11  followed by 22 months of supervised release.  She noted that this was the Defendant's fourth

12  revocation proceeding, and her prior sentences were at the low end or below the guidelines range.

13  The probation officer further argued that a high-end sentence was warranted because two arrest

14  warrants had to be issued this time around.

15        Counsel for the United States joined in the probation officer's recommendation.  She argued

16  that the Defendant's three prior revocation sentences were very lenient.  Ms. San Nicolas also noted

17  that the Defendant discharged herself from the residential treatment program, absconded from

18  supervision and left her children to be cared for by her mother.  The government contended that the

19  high end sentence was consistent with the policy of graduated sanctions.

20        Defense counsel stated that the Defendant has severe mental health issues as well as medical

21  issues.  The Defendant has a bipolar condition for which she is prescribed medication and suffers

22  seizures. Additionally, Ms. Kottke stated that the Defendant was pregnant again and has a follow-up

23  doctor's appointment.  She argued that the Defendant should not be sitting in jail because the drug

24  treatment services and the medication she requires are not available there.  Defense counsel

25  maintained that there is an extreme lack of medical care available at DOC and that the Defendant

26  will not receive the care she needs as a human being with dignity.  Ms. Kottke argued that someone

27  with a seizure sitting in a jail cell for hours without treatment or medication is unreasonable.  She

28  asserted that if the Defendant has a seizure or a miscarriage, the prison would not be able to deal with

1    those issues as acutely as they should.  Ms. Kottke claimed that the Defendant left treatment because

2    of issues she was having with her small infant.  She asserted that the court was not dealing with

3    someone who has the same faculties as other defendants and that the Defendant needed to be treated

4    by Guam Behavioral Health and Wellness Center.  Defense counsel stated that the Defendant has

5    almost five months of detention credit, and she proposed that the court impose a sanction of five

6    months, which is a midrange sentence that is also consistent with the graduated sanction policy.

7    Alternatively, Ms. Kottke suggested a split sentence of five months' incarceration and three months

8    of home detention with location monitoring, which is closer to the high end of the guidelines.

9    Ms. Kottke stated that the Defendant's parents are now living in a concrete structure, so there should

10   be no issue with the location monitoring equipment.  She also claimed that the Defendant is willing

11   to participate in intensive outpatient treatment.  Defense counsel asserted that the defense's proposed

12   sanctions take into account her personal history and characteristics and would allow the Defendant

13   to give birth outside the jail.

14         The court recognizes that the Defendant has cooccurring disorders, which is why the court

15   was lenient with her during the last revocation proceeding in 2020.  The Defendant was also

16   pregnant then, and she told the court that she knew she had to do better for her baby, because she did

17   not want to be a drug addict and  miss out on her baby's life.  By July 2022, the probation officer

18   filed the instant Violation Petition after the Defendant again started using drugs, missing drug

19   testing, and left her residence without notifying her probation officer.  An arrest warrant had to be

20   issued, and she was apprehended about seven months later.  By the time she was arrested, the

21   Defendant was pregnant again.  The parties, the probation officer and the court tried to fashion a

22   remedy that would allow the Defendant to receive drug treatment and medical care for her pregnancy

23   and her seizure disorder.  Much effort was exerted to get the Defendant into the residential program

24   at New Beginnings, where she could have a room on the first floor and would not have to worry

25   about stairs with her seizure disorder.  She gave birth and participated in the residential program for

26   almost four months before she absconded after being allowed to go home for a weekend furlough.

27   The Defendant's parents were left to care for her two children.  A second warrant for her arrest was

28   issued in October 2023, and she was arrested about six months later.  Now, the Defendant is again

1  before the court, pregnant with her third child and asking for leniency. It would be easy for the court

2  to say the Defendant has run out of second chances and deserves a "max out" sentence, but the court

3  is not ready to give up on her yet. The Defendant suffers from cooccurring disorders, which makes

4  treatment even more difficult. Additionally, the Defendant is pregnant with her third child, and

5  given her medical history, the court agrees that DOC is not well-equipped to handle an emergency

6  that may arise during her pregnancy. The Defendant requires medical, psychological and substance

7  abuse treatment, which are not readily available to her while detained at DOC serving a prolonged

8  sentence. Thus, the court recommends a split sentence of six months' imprisonment and three

9  months of home detention with location monitoring. This will allow the Defendant to receive the

10  care she and her baby need, and still punish her for the noncompliance. It is in society's best interest

11  to provide the Defendant with the necessary treatment so that she can be a contributing member of

12  the community and be a good mother to her children.

13  **RECOMMENDATION BY MAGISTRATE JUDGE**

14  Having considered the above factors, the undersigned recommends the Chief Judge accept

15  the Defendant's admissions to all the pending violations, revoke the Defendant's supervised release

16  term, and sentence her to serve a split sentence of six months' imprisonment, with credit for time

17  served,[7] followed by 25 months of supervised release and a condition that she serve three months

18  of home detention with location monitoring.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25

26  [7] The Defendant was arrested on June 12, 2023, and remained detained until May 11, 2023,

27  when she was released so she could participate in a residential treatment program. She was subsequently re-arrested on April 8, 2024, and remains in custody. Accordingly, as of the date of

28  this Report and Recommendation, the Defendant has 147 days of confinement credit.

1    A disposition hearing shall be held on June 20, 2024, at 1:30 p.m., unless otherwise

2    rescheduled by the Chief Judge.

3    IT IS SO RECOMMENDED.



/s/ **Michael J. Bordallo**
   **U.S. Magistrate Judge**
**Dated: May 03, 2024**

**NOTICE**

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**