THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 15-00044-002 |
| Plaintiff, | |
| vs. | **REPORT & RECOMMENDATION CONCERNING VIOLATIONS OF SUPERVISED RELEASE CONDITIONS IN A FELONY CASE** |
| ANNALIN MARIE PEREZ ALDAN, | |
| Defendant. | |

Pending before the court are a Petition for Revocation of Supervised Release and supporting declaration (collectively, the "Violation Petition") filed on October 17, 2024, and a Supplemental Declaration filed on February 26, 2026. *See* ECF Nos. 295 and 397. Together, these filings allege the following supervised release violations:

- Tested positive for methamphetamine on four sweat patches worn (i) September 16-20, 2024, (ii) September 20-25, 2024, (iii) August 11-18, 2025, and (iv) August 25, 2025 - September 1, 2025; Admitted to use of methamphetamine and marijuana on August 29, 2025; and

- Failed to appear for drug testing on September 4, 2025; Failed to appear for sweat patch application on September 8, 2025.

On November 26, 2024, the Defendant entered no contest pleas to the allegations in the Violation Petition. *See* Mins., ECF No. 306. On February 27, 2026, the Defendant further admitted to the violations in the Supplemental Declaration. *See* Mins., ECF No. 398. Having heard argument from the parties, the court now issues this Report and Recommendation as to an appropriate disposition for the supervised release violations.

///

# BACKGROUND

## A.   Conviction and Sentence

On February 12, 2016, the Defendant was sentenced to an imprisonment term of one day and three years of supervised release for the offense of Aiding and Abetting Access Device Fraud (Count 2), and for the offense of Aiding and Abetting Aggravated Identity Theft (Count 3), Defendant was sentenced to an imprisonment term of 12 months, to run consecutively to Count 2, with one year of supervised release (to run concurrently to Count 2). *See* J., ECF No. 61. Among various conditions of supervised release imposed, the Defendant was ordered to refrain from the unlawful use of controlled substances and to submit to drug testing. *Id.* at 3-4.

She served her sentence and began her original term of supervised release on January 10, 2017.

## B.   Post-Conviction Conduct

On July 6, 2018, an informational report was filed after the Defendant admitted she used methamphetamine on June 18, 2018, and marijuana on June 19, 2018, as well as cocaine. *See* ECF No. 76. At the probation officer' request, the court took no action against the Defendant since she had tested negative without incident for more than one year and had completed a substance abuse treatment program. *See* Order, ECF No. 76.

On November 7, 2018, the Defendant's term of supervised release was revoked. *See* Mins., ECF No. 91. The revocation was based on the Defendant's failure to participate in a substance abuse program, failing to report for drug testing twice, testing positive for drug use, failing to report to the Probation Office twice, and failing to notify the Probation Office at least ten days prior to changing her residence. *See* Revocation J., ECF No. 92. She was sentenced to time served (approximately 30 days), followed by 35 months of supervised release. *Id.*

On July 18, 2019, the Defendant's supervised release was revoked for a second time based on her failure to report for drug testing (nine times), failure to participate in a substance abuse treatment program, failure to submit three monthly supervision reports, and failure to notify the probation officer at least ten days prior to changing her residence. *See* R. & R., ECF No. 112, and Revocation J., ECF No. 116. She was sentenced to three months' imprisonment, with credit for time

served, followed by 32 months of supervised release. *Id.* at 3-4.

On December 4, 2019, another informational report was filed after the Defendant submitted two diluted urine samples and admitted to the use of methamphetamine and marijuana. *See* ECF No. 123. At the probation officer's request, the court agreed not to impose any sanction against the Defendant. *See* Order, ECF No. 124.

On September 21, 2020, the Defendant's supervised release term was revoked a third time after she admitted missing seven drug tests, admitted to the use of "meth" and "meth/marijuana" and tested positive for methamphetamine on three instances. *See* R. & R., ECF No. 112, and Revocation J., ECF No. 159. The court sentenced the Defendant to a split sentence of one month imprisonment, with credit for time served, and five months of home detention, with 31 months of supervised release. *Id.* at 2-3. The Defendant was ordered to submit to drug testing, not unlawfully possess or use a controlled substance, to live in a place approved by the probation officer and to notify the probation officer 10 days in advance of any change in residence. *Id.* at 4-5.

On June 27, 2024, the Chief Judge revoked the Defendant's supervised release term and sentenced her to time served (approximately six months and 19 days) and 24 months of supervised release. *See* Fourth Revocation J., ECF No. 287. The revocation resulted after she failed to report for six drug tests, admitted to the use of THC and methamphetamine, tested positive for marijuana metabolite, failed to remain at an approved residence, and was discharged from a residential treatment program. *Id.* and R. & R., ECF No. 282.

The Defendant's current term of supervised release commenced on June 27, 2024. *See* Violation Petition at 1, ECF No. 295.

**CURRENT VIOLATIONS**

**A.  Filing of Violation Petition and Issuance of Arrest Warrant**

On October 17, 2024, the probation officer filed the instant Violation Petition alleging the Defendant violated her supervised release conditions by testing positive for methamphetamine on two drug testing sweat patches. The first sweat patch was worn September 16-20, 2024, and lab results received on October 4, 2024, revealed the patch was positive for methamphetamine. The second sweat patch was worn September 20-25, 2024, and the lab results received on October 7,

2024, indicated the patch was also positive for methamphetamine. The Defendant met with the probation officer on October 11, 2024, to discuss the results. The Defendant denied drug use and stated that she was likely exposed to methamphetamine when a family member used the drug in the bathroom of the residence.

At the request of the probation officer, on October 18, 2024, the court ordered that a summons issue for the Defendant to appear and answer to the allegations. *See* Order, ECF No. 297.

**B.     Initial Appearance**

On October 29, 2024, the case came before the court, but the Defendant was not present. *See* Mins., ECF No. 304. The probation officer stated that the Defendant was still in the hospital, having just given birth to her fourth child recently by C-section. The probation officer stated that any possible drug use by the Defendant was being monitored by sweat patches. Defense counsel and the probation officer agreed that she would be a great candidate for the DORE program. Without objection, the matter was continued to November 26, 2024.

**C.     No Contest Pleas**

On November 26, 2024, the Defendant appeared in court and entered no contest pleas to the allegations in the Violation Petition. *See* Mins., ECF No. 306. The probation officer reported that the Defendant had been testing negative since the filing of the petition, was recovering from recent surgery, attended sessions at LRC, was assigned a social worker with Guam Behavioral Health and Wellness Center ("GBHWC") and was seeing a neurologist but needs to get updated medication for her seizures. Without objection, the court allowed the Defendant to remain released and scheduled a status hearing for December 12, 2024.

**D.     Participation in DORE Program and Issuance of Arrest Warrant**

On December 12, 2024, the parties returned to court, and the probation officer reported that the Defendant was doing well and was unable to get an appointment with a psychiatrist until March 2025. *See* Mins., ECF No. 308. The probation officer asked the court for an order directing the Defendant to get a mental health assessment because GBHWC would not see the Defendant sooner without a court order. The court ordered the Defendant to report to GBHWC for a mental health assessment and to abide by any medical treatment ordered and to take any medication prescribed.

*Id.* and Order, ECF No. 309. The court then scheduled arguments on disposition for January 30, 2025.[1]

On January 10, 2025, the Defendant was accepted into the DORE program. *See* Mins., ECF No. 311. The Defendant progressed through Phase 1 of the DORE program with no issues, and transitioned to Phase 2 on March 28, 2025, with bi-weekly court hearings. *See* Mins., ECF No. 313.

During Phase 2, the court imposed sanctions for various violations committed by the Defendant. On June 27, 2025, the Defendant admitted to drug use, and she was sanctioned with three days in custody. *See* Mins., ECF No. 360, and DORE Sanction, ECF No. 361. On July 31, 2025, the court imposed another three-day custodial sanction for a sweat patch[2] returning positive for methamphetamine. *See* Mins., ECF No. 369, and DORE Sanction, ECF No. 370.

On August 29, 2025, the Defendant signed an admission form that she used marijuana and methamphetamine that day. *See* Mins., ECF No. 379. In lieu of a custodial sanction, the court ordered the Defendant to report to the Adult Inpatient Unit at GBHWC for crisis stabilization. *Id.* and order, ECF No. 377. While she reported as instructed, the Defendant was told that she did not meet the criteria for admission.[3]

At the DORE virtual hearing held on September 5, 2025, the Defendant passed out and was transported to the hospital by ambulance. *See* Mins., ECF No. 381. She failed to appear for the next hearing on September 12, 2025, so a warrant was issued for her arrest. *See* Mins., ECF No. 383.

### E.  Arrest and Detention

On February 12, 2026, the Defendant was arrested by the U.S. Marshals. *See* Warrant Return, ECF No. 394.

On February 13, 2026, the Defendant appeared in court, and defense counsel asked for a short

---

[1] This hearing was later continued to several times while the Defendant participated in the DORE program. *See* Orders, ECF No. 314, 335 and 354.

[2] The Defendant wore the sweat patch July 7-14, 2025.

[3] The probation officer later informed the court that because the Defendant had not been taking her seizure medication for a period of time, GBHWC denied accepting her into the Adult Inpatient Unit.

continuance since counsel had not had time to speak with the Defendant since her arrest. *See* Mins., ECF No. 395. Counsel noted that the Defendant did make significant efforts to get the mental health services required but she was turned away. The court ordered the Defendant remanded to the marshals' custody and set a further hearing for February 27, 2026.

**F.    Filing of Supplemental Declaration**

On February 26, 2026, the probation officer filed a Supplemental Declaration alleging further violations of the Defendant's supervised release conditions. *See* ECF No. 397. According to the declaration, the Defendant wore a drug testing sweat patch August 11-18, 2025, which was thereafter sent to the lab for analysis. Results received on September 2, 2025, revealed the patch was positive for methamphetamine. Additionally, the probation officer noted that the Defendant admitted to the use of methamphetamine and marijuana on August 29, 2025, but did not receive a DORE sanction for her drug use. Another sweat patch was worn by the Defendant August 25, 2025, to September 1, 2025, and the lab reported that the results were positive for methamphetamine. Finally, the Defendant failed to appear for drug testing on September 4, 2025, and failed to report for a new sweat patch application on September 8, 2025.

**G.    Further Admissions**

On February 27, 2026, the parties returned to court, and the Defendant was formally terminated from the DORE program based on her prolonged absence. *See* Mins., ECF No. 398. The Defendant then entered admissions to all the violations in the Supplemental Declaration. The probation officer and defense counsel presented their respective positions on an appropriate sanction for the violations. Having heard the parties' argument, the court now issues this Report and Recommendation for the Chief Judge's consideration.

## LEGAL STANDARD

The standard of proof for revocation of supervised release is governed by statute. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence

supports" revocation). Pursuant to Section 3583(g), revocation is mandatory if the defendant refuses to comply with required drug testing or if a defendant tests positive more than three times over the course of one year. *See* 18 U.S.C. § 3583(g)(3) and (4).

## PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED

The Amended Violation Worksheet notes that the violations are Grade C violations, with a guidelines range of 3-9 months of imprisonment, based on the Defendant's criminal history category of I, followed by 15-21 months of supervised release. *See* Am. Violation Worksheet at ¶¶7-10 and 13, ECF No. 397-1. Revocation is mandatory since the Defendant refused to comply with required drug testing and tested positive more than three times over the course of one year.

Because her underlying convictions were for Class C and Class E felonies, the maximum imprisonment term the Defendant faces for a revocation proceeding is 24 months. *See* 18 U.S.C. § 3583(e). The Defendant's first revocation sentence was approximately 30 days. *See* Revocation J., ECF No. 92. The Defendant was sentenced to three months for the second revocation. *See* Revocation J., ECF No. 116. For the third revocation, the Defendant received a split sentence of one month imprisonment and five months of home detention. *See* Revocation J., ECF No. 159. Finally, the Defendant was sentenced to approximately six months and 19 days for the fourth revocation, *see* Fourth Revocation J., ECF No. 287, for a total of approximately 11 months and 19 days.

For the instant violations, the probation officer asked that the Defendant be sentenced to nine months' imprisonment – the high end of the guidelines – because this was her fifth revocation proceeding. Defense counsel asserted that the Defendant wanted a "max out" sentence and asked the court for a sentence of 12 months and one day. Counsel acknowledged that various services had already been extended to the Defendant, and she believed that it was in the Defendant's best interest to get the maximum and be done with supervised release. Counsel for the United States took no position on the matter.

The court concurs with defense counsel's recommendation. The Defendant has been on supervised release with the court since January 2017. During the last nine years, the Defendant was offered various services to help her deal with both her mental health issues, her medical issues and her drug addiction. She would go through long period of compliance, but hurdles in her life would

cause her to stumble and become noncompliant with her supervised release conditions. While the court always willing to work with a defendant who wants to be sober, the Defendant no longer wants the services the court and the probation office have offered to her. Given her past track record, it is in the Defendant's interest to serve the maximum sentence with no further supervision to follow. With a longer sentence, the Bureau of Prisons may be able to designate her to an off-island facility that will offer her the medical, psychological and substance abuse treatment she needs to address her cooccurring disorders.

## RECOMMENDATION BY MAGISTRATE JUDGE

Having considered the above factors, the undersigned recommends the Chief Judge accept the Defendant's admissions and no contest pleas to all the pending violations, revoke the Defendant's supervised release term, and impose a sentence of 12 months and one day, with credit for time served and no supervised release term to follow.

A disposition hearing shall be held on April 20, 2026, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Mar 09, 2026

## NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**